# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY A. FEBRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 1962 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Jeffrey Febre's ("Febre") motion for summary judgment and Defendant Jo Anne Barnhart's motion for judgment on the pleadings. For the reasons stated below, we deny both motions and remand this case to the Social Security Administration ("SSA") for further proceedings consistent with this opinion.

## BACKGROUND

1

Febre filed an application with the SSA for Disability Insurance Benefits on in April 2002. According to Febre, he is disabled due to several "severe impairments," including valley fever, pancreatitis, dyspnea, and fatigue. (P Mot. 6). Febre alleges that he has had several surgeries as a result of these illnesses, "prior to the onset of disability." (P Mot. 9). Febre further alleges that he had one year of college education, has "no special training other than experience acquired on the job," and his past relevant work included marketing for a publishing company, telemarketing, and sales. (P Mot. 4-5). Finally, Febre claims that his last "unsuccessful work attempt" was with a "financial company in 2002." (P Mot. 5).

Febre's application for disability benefits was initially denied on July 26, 2002, and on December 27, 2002 his request for reconsideration was also denied. Febre claims that on January 30, 2003, he filed a request for a hearing before an Administrative Law Judge ("ALJ"). The ALJ denied Febre disability benefits on December 17, 2004. The Appeals Council declined to hear Febre's claims in February, 2005. Febre is now seeking a reversal of the SSA's decision to deny Febre disability benefits.

## LEGAL STANDARD

A reviewing court will uphold an ALJ's decision if it is supported by "substantial evidence" in the record and the ALJ applied the correct legal standards. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "Substantial evidence" is

2

defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). When determining if substantial evidence exists, the court must review the record as a whole but is not allowed to substitute its judgment for the ALJ's by "reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Williams v. Apfel*, 179 F.3d 1066, 1071-72 (7th Cir. 1999). Deference should be given to an ALJ's determinations relating to credibility and should be reversed only if the determinations are "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (quoting *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)). By contrast, the ALJ's legal conclusions are reviewed de novo. *Aidinovski v. Apfel*, 27 F.Supp.2d 1097, 1101 (N.D.Ill. 1998). However, an ALJ must provide some explanation that would allow the parties to understand his reasoning for his decision. *See Clifford*, 227 F.3d at 872 (stating that an ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). Further, in reviewing the decision, the court must confine its review to the explanation and reasoning given by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

## DISCUSSION

The SSA employs a five-step process to evaluate applicants for federal disability benefits. First, if an applicant is engaged in substantial gainful employment, that applicant does not qualify for disability insurance. 20 C.F.R. §§

3

404.1520(a)(4), 416.920(a)(4). Second, if the applicant does not have a sufficiently severe physical or mental impairment, the SSA will deny disability insurance. *Id.* Third, if the applicant's impairment or combination of impairments satisfies or is medically equivalent to one of a series of enumerated disability "listings," the SSA will find that the applicant is disabled. *Id.* Fourth, the SSA calculates the applicant's "residual functional capacity" ("RFC") with the impairment, and if the SSA finds that the applicant can still perform the same relevant work after the impairment as before, the SSA will deny benefits. *Id.* Finally, using the same RFC along with the applicant's age, education and work experience, the SSA determines whether the applicant can adjust to other work, in which case the SSA will deny disability insurance. *Id.*

This process is structured so that if an applicant satisfies steps one through three, the inquiry ends and the SSA finds the applicant disabled. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir.1995). However, if the applicant satisfies the first two steps but does not satisfy the third, the inquiry proceeds to the fourth and, possibly, fifth steps. *Id.* In the instant action, it is undisputed that Febre is not engaged in substantial gainful employment. (D Mot. 6). However, Febre claims that the ALJ erred in steps two, three, and four of the necessary analysis.

I. Step Two (Mental or Physical Impairment)

Febre claims that the ALJ did not conduct a sufficient analysis under step two,

4

under which the ALJ is required to determine whether a claimant seeking disability benefits has a sufficiently severe physical or mental disability. 20 CFR § 404.1520(ii)(stating that "[a]t the second step, we consider the medical severity of your impairment(s) [and that] [i]f you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled). Specifically, Febre claims that the ALJ did not offer "any rationale" for its decision under step two. (P Mot. 13). The SSA claims, on the other hand, that the ALJ considered the opinions of several physicians who "found no evidence to support the existence of either a physical or mental impairment." (Resp. 7).

Febre is claiming that he is eligible for disability benefits due to physical impairments, namely shortness of breath and fatigue, and mental impairments, namely depression. In addressing Febre's alleged physical impairments under step two, the ALJ discussed a significant amount of medical evidence that showed Febre's physical problems were not severe. For example, the ALJ cited a determination after a consultative examination for the Bureau of Disability Determination Services ("Bureau"), which stated that "on examination, there is no respiratory distress." (AR 15). The ALJ also discussed a post-initial hearing examination by the Bureau, which found that Febre's "forced expiratory volume in one second" was 83%, and that Febre was "capable of performing light work." (AR

15). The doctor at this same examination also noted that Febre smelled of tobacco after telling the doctor that he had quit smoking ten to twelve years earlier. Febre then admitted "that he sometimes smoked one or two cigars." (AR 15). Additionally, the ALJ discussed the results of a post-hearing examination by a pulmonologist, who found that Febre's ventilation studies were "good" and that there was "no data (emphasis supplied by Dr. Eagleton in her report) to suggest that the claimant equals or comes even close to" having a severe disability under the SSA's guidelines. (AR 15). The ALJ considered the testimony of another medical expert, who found "that there was not a lot of objective medical evidence to support claimant's allegations or testimony of a ... physical ... impairment," that Febre "does not meet or equal the criteria of any listing in the Listing of Impairments," and that Febre "may not even have a severe impairment." (AR 16).

The ALJ also discussed medical evidence provided by Febre after the hearing, which showed "a mild restrictive ventilatory defect," a "notation of normal total lung capacity," and evidence that Febre's "lungs were are clear, other than evidence of past surgery." (AR 16). Finally, the ALJ also discussed Febre's own testimony regarding his impairments, and found it "highly questionable, inconsistent and not credible when compared" to the medical evidence discussed above. (AR 17). The ALJ stated that he based this finding on the fact that Febre gave inconsistent statements regarding his ability to walk and that Febre stated he had stopped smoking, even though he smelled like smoke and admitted to smoking cigars. The

6

ALJ also noted that, despite Febre's claims that he "did not feel good about being at the hearing," Febre "did not exhibit any symptoms or signs of stress, discomfort, fatigue or shortness of breath participating in the hearing." (AR 17).

In light of the large amount of medical evidence relating to Febre's alleged physical impairments discussed by the ALJ, we find that the ALJ properly completed the step two analysis in regard to Febre's claim of a physical disability. The ALJ clearly considered a great deal of information, all of which supported his ultimate finding that Febre did not have a severe physical impairment, and Febre did not point to any evidence in the record that the ALJ should have, but did not, consider that would have led to a different conclusion. Furthermore, the ALJ clearly laid out his reasons for finding Febre's testimony incredible, a determination to which the courts must give great deal of deference. *See Taylor v. Barnhart*, 425 F.3d 345, 354 (7th Cir. 2005)(stating that "credibility determinations are entitled to special deference because the ALJ is in a better position than the reviewing court to observe a witness"). Given all of this, we find that the ALJ created a proper "bridge from the evidence to his conclusion," *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000), and, thus, we deny Febre's motion for summary judgment to the extent that it concerned his physical impairments.

Febre also claims that the ALJ did not complete a proper step two analysis in regard to his mental impairments. In the ALJ's decision, he states that after a psychiatric evaluation for the Bureau, Febre was diagnosed with "recurrent major

7

depression." (AR 15). Another doctor for the Bureau found Febre "markedly limited in maintaining his activities of daily living, and moderately limited in maintaining social functioning, concentration, persistence or pace." (AR 15). Finally, the ALJ states that the final medical expert who reviewed Febre "did not see a mental evaluation in the file" and that "[r]egardless of the fact that [this medical expert] did not discuss the psychiatric findings of record, the record and findings are clear on their face . . . that claimant is not severely impaired." (AR 16, 17).

Given that the evidence cited by the ALJ in regard to Febre's alleged mental impairment was scant, that the evidence cited by the ALJ actually supports Febre's claim of a severe mental impairment, and the fact that the ALJ clearly states that one of the experts was not given the evidence related to Febre's mental impairments, we find that the ALJ did not conduct a proper step two analysis in regard to Febre's alleged mental impairments. Therefore, we deny Febre's motion for summary judgment and Defendant's motion for judgment on the pleadings, but instead remand the instant action to the ALJ to complete a proper step two analysis in regard to Febre's alleged mental impairments.

II. Step Three (Listed Impairments)

Febre also argues that the ALJ failed to conduct a proper step three analysis, under which the ALJ is required to determine whether a claimant's medical conditions satisfies or is medically equivalent to one of a series of enumerated

8

disability listings. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In the ALJ's decision, the ALJ cited the determination by two of the Bureau's medical experts that Febre's conditions did not meet or equal any of the listings. (AR 15, 16). One expert, the pulmonologist, stated that Febre's conditions did not meet "or even come close to listing levels" for Listing 3.02, chronic pulmonary insufficiency, or Listing 5.08, persistent gastrointestinal disorder. (AR 15). Because an ALJ can rely on the opinion of "a physician designated by the Secretary to determine medical equivalence," *Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir. 1990), we find that the ALJ conducted an appropriate step three analysis in regard to Febre's alleged physical impairments.

Neither of the medical experts cited by the ALJ in regard to the step three analysis considered Febre's possible mental impairments. The pulmonologist, for obvious reasons, only considered Febre's physical impairments. The other medical expert, who the ALJ said "stated that the claimant does not meet or equal the criteria of any listing in the Listing of Impairments," never saw any records in Febre's file relating to Febre's mental impairments. (AR 16). Therefore, we remand the instant action to the ALJ to conduct a proper determination of whether Febre's alleged mental impairment satisfies or is medically equivalent to one of the disability listings.

### III. Step Four (Residual Functional Capacity and Past Relevant Work)

9

Febre claims that the ALJ did not properly complete the analysis under step four, in which the ALJ must determine the applicant's RFC with the impairment, and if the ALJ finds that the applicant can still perform the same relevant work after the impairment as before, the ALJ will deny benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). However, because the ALJ did not err in finding that Febre lacked a severe physical impairment under step two and that Febre's physical complaints did not satisfy one of the disability listings, the ALJ was not required to proceed to step four for Febre's alleged physical impairments. *See Knight v. Chater*, 55 F.3d 309, 313 (7th Cir.1995)(stating that "[i]f a claimant satisfies steps one, two, and three, she will automatically be found disabled [but] [i]f a claimant satisfies steps one and two, but not three, then she must satisfy step four).

Febre also claims that the ALJ did not conduct a proper analysis in regard to his alleged mental impairments under step four. As part of this argument, Febre alleges that the hypothetical question posed by the ALJ to the vocational expert in this case was flawed because it made no mention of Febre's mental impairment. (AR 444-45). As discussed above, the ALJ's decision does not properly explain how he reached his conclusions regarding Febre's mental health. Given that the ALJ did not properly consider this evidence, the ALJ would not be able to make a properly reasoned decision about whether Febre's RFC or his ability to perform his past work, despite his alleged mental impairment. Further, the Seventh Circuit has stated that "[the hypothetical question posed by the ALJ to [a vocational expert]

must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Hebron v. Halala*, 19 F.3d 329, 337 (7th Cir. 1994). In this case, because the ALJ summarily dismissed Febre's claims regarding his alleged mental impairment, we cannot determine whether Febre's claims regarding his mental health were sufficiently supported by the record to be posed to the vocational expert. However, if the ALJ upon remand reaches step four, he should adequately consider Febre's mental health claim.

## IV. Credibility

As a final matter, Febre claims that "the ALJ's credibility determination was patently wrong." (Mot. 18). As stated above, we must give a good deal of deference to an ALJ's determination of a claimant's credibility, especially when the ALJ's determination rests on "subjective considerations." *Hebron*, 19 F.3d at 335. In the instant action, the ALJ cited a number of reasons in his decision for why he found Febre's credibility "highly questionable," including that Febre was inconsistent when asked whether he still smokes, that the ALJ witnessed no signs of Febre's alleged physical impairments during their hearing, that Febre had not sought any medical treatment since 1998 for his physical impairments, and that Febre had sought no treatment at all for his alleged mental impairment. *See Cultural v. Bowen*, 857 F.2d 410, 413-14 (7th Cir. 1988)(considering a claimant's lack of medical treatment as a relevant factor in determining whether the claimant was disabled).

Therefore, we deny Febre's motion for summary judgment to the extent that it is addressing the ALJ's credibility finding.

## CONCLUSION

Based on the foregoing analysis, we deny Febre's motion for summary judgment, deny Defendant's motion for judgment on the pleadings, and remand the instant action to the ALJ for proceedings in accordance with this opinion.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: November 15, 2005